IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ALLEN G. HUTCHENS, | ) | |
| | ) | |
| Plaintiff, | ) | CV-04-281-ST |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| TERESA HUTCHENS-COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Defendant seeks to dismiss plaintiff's Second Amended Complaint based on failure to state a claim, failure to join necessary parties, and lack of jurisdiction (docket #89). For the reasons set forth below, that motion should be granted in part and denied in part.

## **LEGAL STANDARD**

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."

1 - FINDINGS AND RECOMMENDATION

*Sprewell v. Golden State Warriors*, 266 F3d 979, 988 (9th Cir), *opinion amended on denial of rehearing,* 275 F3d 1187 (2001). The court must accept as true all material, well-pleaded allegations in a complaint, as well as all reasonable inferences from those allegations. *Id.*

## BACKGROUND

Plaintiff's claims arise from a family dispute concerning the disposition of the assets of his mother, Juanita M. Wright ("Wright"), who died in 2003. Wright had four children. Plaintiff, who resides in Florida, is her oldest son. Defendant, Teresa Hutchens-Collins, an attorney in Bend, Oregon, is Wright's granddaughter and plaintiff's niece; defendant's father (now deceased) was plaintiff's brother. Plaintiff claims to be the intended recipient of one-third of Wright's estate, and alleges that defendant diminished his inheritance by improperly using her Power of Attorney to disburse Wright's assets prior to her death in a manner inconsistent with Wright's will.

Defendant previously filed a motion to dismiss the Amended Complaint which was granted in part and denied in part (docket #77). Plaintiff then filed the Second Amended Complaint alleging two claims for interference with a prospective inheritance and intentional infliction of severe emotional distress. Defendant now seeks to dismiss both of those claims.

## DISCUSSION

**I.** **Intentional Infliction of Emotional Distress**

Defendant argues that plaintiff's claim for intentional infliction of emotional distress ("IIED") should be dismissed because it was previously dismissed with prejudice and still fails to state a factual basis upon which relief can be granted.

Contrary to defendant's first argument, plaintiff's prior IIED claim was not dismissed with prejudice. This court found that plaintiff's prior IIED claim (alleged as the Third Claim in the Amended Complaint) satisfied the real party in interest requirement, but that the facts alleged failed to state a claim. As a result, the IIED claim was dismissed without prejudice (docket #77). Defendant correctly notes that plaintiff's Eighth and Ninth claims in the Amended Complaint were dismissed with prejudice. While overlapping thematically with the IIED claim, the Eighth and Ninth claims were essentially prayers for particular types of damages (mental anguish, emotional distress, and punitive damages). The court dismissed these claims because plaintiff could seek these remedies in conjunction with the remaining tort claim. Accordingly, plaintiff was free to file a new IIED claim to correct the factual deficiency of the previously alleged IIED claim.

The IIED claim in the Second Amended Complaint includes factual allegations that were absent from the Amended Complaint. Plaintiff now alleges that he came to Portland, Oregon, from his home in Florida to visit his ailing mother, Wright. He found Wright emotionally distraught over changes in her financial affairs that were orchestrated by defendant and resulted in plaintiff receiving a diminished inheritance. Plaintiff alleges that the sight of his distraught mother, combined with the realization that he would be deprived of an inheritance, triggered severe emotional distress which resulted in his hospitalization for bleeding ulcers and depression, and that his reaction was a foreseeable result of defendant's conduct.

Defendant argues that these facts may state a claim for *negligent* infliction of emotional distress, but do not state a claim for *intentional* infliction of emotional distress because the element of intent is missing. Defendant also argues that an IIED claim requires "an

3 - FINDINGS AND RECOMMENDATION

extraordinary transgression of the bounds of socially tolerable conduct" which defendant contends is absent here. *Patton v. J.C. Penny Co.*, 301 Or 117, 122, 719 P2d 854, 857 (1986) *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or 532, 544, 901 P2d 841, 849 (1995). The court agrees that plaintiff fails to state an IIED claim.

To state a claim for IIED, a plaintiff must set forth facts demonstrating the following elements:

> (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

*McGanty*, 321 Or at 543, 901 P2d at 849, quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000, 1009 (1989).

With regard to the first element, "intent" means either that the actor desires to inflict severe emotional distress, or that distress is certain or substantially certain to result from his conduct. *Id* at 550-51, 901 P2d at 853. Either "intent" or "substantial certainty" satisfies the element; both are not required. *Id.*

Plaintiff alleges that defendant's actions were motivated by malicious or reckless intent and designed for the purpose of causing emotional distress to him (in addition to Wright). Although this allegation is conclusory, it is supported by other allegations that due to his elderly, crippled and poor condition, any disruption of his rights of inheritance was substantially certain to cause him severe emotional distress, a circumstance of which defendant was well aware. These factual allegations are sufficient to satisfy the element of intent.

With regard to the second element of causation, plaintiff alleges that a wrongful disruption of his inheritance rights caused severe emotional distress, which manifested itself physically with bleeding ulcers that required hospital treatment. These allegations satisfy the second element.

Whether defendant's conduct amounts to an extraordinary transgression of the bounds of socially tolerable conduct is a more difficult question. Determining this issue is initially a question of law. *Harris v. Pameco Corp.*, 170 Or App 164, 171, 12 P3d 524, 529 (2000). Determining whether the conduct alleged is sufficiently extreme or outrageous is a fact-specific inquiry made on a case-by-case basis considering the totality of the circumstances. *Lathrope-Olson v. Dept. of Transp.,* 128 Or App 405, 408, 876 P2d 345, 346 (1994). Some of the factors to consider are: "whether a special relationship exists between" the parties; "whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual;" and the setting in which the conduct occurred, "for example, in a public venue or within the employment context." *Rosenthal v. Erven*, 172 Or App 20, 23-24, 17 P3d 558, 560 (2001).

Although plaintiff alleges that defendant intended to take advantage of him as a vulnerable individual, the setting in which the conduct occurred was not a public venue or within the employment context. The other factor to consider, the relationship between the parties, is perhaps the most important one in determining what type of conduct is actionable. "[A] defendant's position or role *vis-à-vis* a plaintiff may be one that 'imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be

true in arm's length encounters among strangers.'" *Williams v. Tri-Met*, 153 Or App 686, 689-90, 958 P2d 202, 204 (1998) quoting *McGanty,* 321 Or at 547-48, 901 P2d at 851.

Although plaintiff and defendant are related by blood and are not strangers, their relationship imposes no fiduciary obligation and is not the type of special relationship which supports an IIED claim. Examples of such special relationships are employer/employee (*e.g., Babick v. Oregon Arena Corp.* 333 Or 401, 40 P2d 1059 (2002)), landlord/tenant (*Richer v. Poisson*, 137 Or App 157, 903 P2d 932 (1995)), guardian/disabled ward (*Checkley v. Boyd*, 198 Or App 110, 107 P3d 651 (2005)), and psychiatrist/patient (*Spiess v. Johnson*, 89 Or App 289, 748 P2d 1020, *aff'd* 307 Or 242, 765 P2d 811 (1988)). "In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim." *Delaney v. Clifton,* 180 Or App 119, 130, 41 P3d 1099, 1106-07 (2002).

Defendant, a lawyer, did have a special relationship with Wright for whom she was acting pursuant to a Power of Attorney (which was allegedly revoked). However, the Oregon courts have been reluctant to allow the assertion of an IIED claim by a third-party to a special relationship. In *Delaney*, a patient's former husband sued her professional counselor and clinical psychologist for IIED based on the misdiagnosis of his then-spouse's condition. The court rejected the IIED claim because imposing heightened duties on therapists to third-parties would put them "in the untenable position of potentially compromising their judgment, and necessarily their patient's interests, in order to safeguard the emotional well-being of persons outside the therapist-patient relationship." *Id*, 180 Or App at 131, 41 P3d at 1107. Noting that "[s]evere distress to other family members is predictable and perhaps even inevitable" in many therapy situations," (*id*, 180 Or App at 132, 41 P3d at 1108), the court concluded that it is not an

6 - FINDINGS AND RECOMMENDATION

extraordinary transgression of the bounds of socially tolerable conduct for a therapist to disregard "the psychic interests of nonparties to the relationship." *Id*, 180 Or App at 133, 41 P3d at 1108.

Similarly, plaintiff was an outsider to any special relationship that may have existed between defendant and Wright. Defendant had no heightened duty to plaintiff sufficient to support an IIED claim merely because of her relationship with Wright.

In essence, defendant's alleged conduct is a wrongful manipulation of another's inheritance. Needless to say, a dispute among family members surrounding the end of a relative's life and disposition of the relative's belongings necessarily deals with inherently emotional and stressful issues. The conduct of some family members is substantially certain to cause severe emotional distress to other family members. To allow an IIED claim under such circumstances is problematic at best. The abusive conduct must go beyond the outer limits of what a reasonable person in plaintiff's position would be expected to tolerate. The allegations in this case simply do not rise to that level.

As discussed below, plaintiff has a claim for intentional interference with prospective inheritance, which is much better suited to these allegations and supports an equivalent breadth of remedies. *See generally Curtis v. MRI Imaging Services II,* 327 Or 9, 956 P2d 960 (1998) (alleged emotional distress resulting from medical treatment is properly channeled through a professional negligence claim where IIED claim is otherwise problematic).

Accordingly, this court concludes that plaintiff's IIED claim should be dismissed because, as a matter of law, the conduct alleged does not rise to the level of an extraordinary transgression of the bounds of socially tolerable conduct.

## II. Intentional Interference with Prospective Inheritance

Defendant also argues that plaintiff fails to allege facts sufficient to state a claim for intentional interference with prospective inheritance ("IIPI"). As addressed in the previous ruling, under Oregon law, IIPI does not exist as a tort of its own, but instead as an extension of the intentional interference with economic relations tort. *Allen v. Hall*, 328 Or 276, 284-85, 974 P2d 199, 204 (1999). To bring a claim for IIPI, a plaintiff must allege each of the following elements:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty*, 321 Or at 535, 901 P2d at 844.

This court previously ruled that plaintiff's allegations satisfied these requirements. Defendant, however, renews her opposition and argues that plaintiff must allege "conduct tortious in itself, such as a fraud or defamation or conduct depriving a testator . . . of the capacity to act, as where there is duress or undue influence." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 130, p. 1007 (5th ed 1984). Defendant's characterization of the law is essentially accurate, although the language from *Prosser on Torts* has yet to be explicitly embraced by the Oregon courts. Rather than "conduct tortious itself," Oregon requires a plaintiff to allege conduct that was "improper." *Allen*, 328 Or at 286, 974 P2d at 205.

Though the narrative presented by plaintiff is somewhat wide-ranging, his allegations are adequate to support an IIPI claim. Plaintiff alleges that when defendant learned that Wright

8 - FINDINGS AND RECOMMENDATION

intended to change her will to provide plaintiff with an inheritance, she embarked on a scheme designed to thwart that intention. Specifically, plaintiff alleges that on May 5, 2002, two days after being notified that Wright had revoked her Power of Attorney, defendant knowingly and wrongfully acted as Wright's attorney-in-fact in good standing and prepared and executed a promissory note between Wright and Defendant's husband, Matthew Collins. As a result, Matthew Collins received $12,500 of Wright's estate. Furthermore, plaintiff alleges that the promissory note was structured such that, upon Wright's death, the balance owing on the promissory note would go to defendant's children, rather than to the heirs specified in Wright's will. Wright's Last Will and Testament, dated July 5, 2002, listed plaintiff as an heir, which suggests that Wright indeed intended that plaintiff receive the inheritance at issue.

These allegations are sufficient to state a claim for IIPI because the conduct alleged is improper, suggests undue influence and is quite plausibly tortious as well. An IIPI claim is squarely applicable to such circumstances. *See Allen*, 328 Or at 285, 974 P2d at 204 (misrepresenting a testator's testimonial capacity and falsely claiming a Power of Attorney to stop life support will sustain a claim for IIPI).

Defendant also argues that plaintiff has failed to "allege facts that establish a causal relationship between the interference and the prospective advantage." *Id*, 328 Or at 286, 974 P2d at 205. This argument is misplaced. The alleged facts set forth the requisite causal basis, namely that defendant allegedly arranged the structure of the loan to deprive plaintiff of a sizable portion of his expected inheritance and diverted those funds instead to her own children. The loan significantly diminished the size of Wright's estate, which would undoubtably cause damage to plaintiff as an heir.

Accordingly, defendant's motion to dismiss plaintiff's IIPI claim should be denied.

**III.   Abstention**

Defendant contends that plaintiff's allegations should be raised in a state court probate action where the heirs reside, and that this court should therefore abstain under the 11th Amendment and the *Rooker-Feldman* doctrine, citing *Moccio v. New York*, 95 F3d 195 (2nd Cir 1996) (dismissing a §1983 action by a state employee against his former employer alleging that his termination violated his constitutional rights under the Fourteenth Amendment).  Application of the *Rooker-Feldman* doctrine results in this court's lack of subject matter jurisdiction.  *Wolfe v. Strankman*, 392 F3d 358, 363 (9th Cir 2004).

*Moccio* has recently been cited as an example of misguided over-extension of the *Rooker-Feldman* doctrine.  *Exxon Mobile Corp. v. Saudi Basic Ind. Corp.*, 125 S Ct 1517, 1521-1522 (2005).  "The *Rooker-Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district proceedings commenced and inviting district court review and rejection of those judgments."  *Id.*  The *Rooker-Feldman* doctrine is inapplicable to this case which is not brought by a "state-court loser" and does not involve a state court judgment rendered prior to these proceedings.

Other theories of abstention are similarly inapplicable largely based on the lack of prior or pendant state court proceedings.  In diversity cases, abstention may be appropriate where underlying questions of state law are unclear.  *See Louisiana Power and Light Co. v. City of Thibodaux*, 360 US 25, 79 S Ct 1070 (1959).  No such difficulty is presented here.  In fact, the Oregon Supreme Court has held that an IIPI claim brought to federal court sitting in diversity

10 - FINDINGS AND RECOMMENDATION

jurisdiction does not interfere with the state's statutory scheme of probate. *Allen*, 328 Or at 284, 974 P2d at 204 (a "tort claim does not become a will contest simply because it arises out of facts relating to the making or unmaking of a will"). Accordingly, it cannot be said that Oregon law is unclear.

Therefore, application of the *Rooker-Feldman* and other abstention doctrines is not appropriate.

### IV. Failure to Join a Necessary Party and Lack of Jurisdiction

Elaborating on the notion that plaintiff's claims are too intertwined with state law probate issues to be cognizable by this court, defendant makes two additional arguments in support of dismissal: (1) failure to join necessary parties under FRCP 19(a); and (2) lack of complete diversity jurisdiction.

FRCP 19(a) requires the joinder of absent parties where their absence from the action will have a prejudicial effect on that person's ability to protect that interest or will "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Defendant argues that the two other heirs to Wright's estate are necessary parties because their interest would be impaired by the remedy that plaintiff seeks. This argument misconstrues the nature of plaintiff's claim, which is not an interpleader action, but a tort claim against two different individuals, neither of whom are heirs.

Plaintiff does not name the estate or its representatives as defendants and, therefore, cannot reach assets of the estate which appear to have been disbursed already. The interest of the other heirs is in no way affected. The fact that the named defendant might incur personal liability that exceeds any benefit she may have derived from Wright's estate is irrelevant. This is

11 - FINDINGS AND RECOMMENDATION

not the sort of "multiple inconsistent obligation" contemplated by FRCP 19(a). As explained by the Oregon Supreme Court, a "tort claim does not become a will contest simply because it arises out of facts relating to the making or unmaking of a will." *Allen*, 328 Or at 284, 974 P2d at 204. For these reasons, the other heirs are not necessary parties.

Defendant's motion to dismiss for lack of diversity jurisdiction is premised on the argument that the other two heirs who reside in Oregon are necessary parties. Because that argument fails, the issue of diversity jurisdiction is moot.

## RECOMMENDATION

For these reasons, defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (docket #89) should be GRANTED as to the claim for intentional infliction of emotional distress and DENIED as to the claim for intentional interference with prospective inheritance.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **July 18, 2005.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 28th day of June, 2005.

    /s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge